**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Inez Rodriguez, | No. 2:09-cv-1814-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Bank of America, N.A.; Countrywide Home Loans, Inc., | |
| Defendants. | |

Before the Court is Defendant Countrywide Home Loans' ("Countrywide") Motion for Summary Judgment (Doc. 37). For the reasons stated below, the Court grants Countrywide's motion.

**I.  Background**

Plaintiff Inez Rodriguez began working for Countrywide in Simi Valley, California, in August 1998. In 2007, she transferred to Countrywide's facility in Phoenix, Arizona, where she worked full-time as an auditor until she was terminated on August 2008.

Countrywide's Family and Medical Leave Act ("FMLA") policy provided that eligible employees were permitted up to twelve weeks of leave in a rolling twelve-month period for the employee's own serious health condition. Employees were required to advise Countrywide, at least every thirty days, of their status and intent to return to work, and were responsible for providing Countrywide with updated health care provider certifications. The

policy also stated that:

> If employees exceed 12 weeks of FMLA Leave and still need to be absent due to their own serious health condition, then they will be placed on a Non-FMLA Medical Leave of absence for up to one month (or longer to meet a request for a reasonable accommodation). Accordingly, an employee may be on a combination of FMLA Leave and Non-FMLA Medical Leave for up to a total of 4 months.

On May 15, 2008, Rodriguez was seen by her physician, Dr. David Rope, who placed her on a leave of absence due to stress-related problems. The next day, Rodriguez relayed Dr. Rope's diagnosis to Countrywide. Countrywide granted Rodriguez's request for FMLA leave the same day. On May 19, 2008, Dr. Rope, faxed a note to Countrywide indicating that Rodriguez would be on leave from May 16, 2008, through May 23, 2008.

Also on May 19, 2008, Countrywide mailed to Rodriguez's then current address a FMLA Designation Letter with FMLA paperwork, consisting of: (1) a Leave of Absence Request form; (2) a Health Care Provider Certification form; and (3) copies of Countrywide's Leave of Absence Overview, Countrywide's FMLA Policy, and Countrywide's FMLA Fact Sheet. Rodriguez received the documents on May 20, 2008.

On May 23, 2008, the last day of Rodriguez's approved leave, Rodriguez was admitted to the hospital, where she remained for five days. Around the same time, Rodriguez submitted to Countrywide her completed Leave of Absence Request form and Health Care Provider Certification form.

On May 27, 2008, Dr. Rope faxed a note to Countrywide extending Rodriguez's leave of absence through June 23, 2008. Countrywide approved the extension through that date. On June 5, 2008, Rodriguez allegedly contacted Countrywide and left a message inquiring about how to apply for short-term disability benefits. On June 25, 2008, Rodriguez telephoned Countrywide and was told that Countrywide required a note from her doctor to further extend her leave of absence. During that call, she was told that a letter had been sent to her old address. She informed Countrywide of her new address.

Rodriguez contends that on June 26, 2008, Dr. Rope faxed a note to Countrywide indicating that Rodriguez was in no condition to work and was still undergoing care.

- 2 -

Rodriguez also alleges that on July 5, 2008, she contacted Countrywide to provide her new cell phone number and discovered that her address of record had not been updated. Countrywide assured Rodriguez that her address of record would be updated.

According to Rodriguez, Dr. Rope sent another note to Countrywide on July 7, 2008. Countrywide then extended Rodriguez's leave of absence through July 26, 2008. Rodriguez alleges she contacted Countrywide on July 8, 2008, to request her payroll check and discovered that her address of record still had not been updated. Rodriguez then provided her new contact information for a third time.

On July 30, 2008, Countrywide sent a letter, allegedly to Rodriguez's former address, indicating that without a further submission of documentation from Rodriguez's doctor supporting her leave of absence by August 4, 2008, her failure to return to work would be considered job abandonment and her employment would be terminated. Rodriguez did not receive the July 30, 2008 letter until some unknown date in the future.

On August 13, 2008, two days after her twelve-week FMLA leave expired on August 11, 2008, Rodriguez received a termination letter at her new address, dated August 12, 2008. In the letter, Countrywide informed Rodriguez that she had abandoned her job and that her employment had been terminated. Rodriguez alleges that Countrywide had approved her leave through July 30, 2008. She claims that at a follow-up appointment with Dr. Rope the same day, she was told that Dr. Rope would extend her leave through August 31, 2008, and would fax another note to Countrywide. However, Countrywide claims it never received the note.

Rodriguez could not have returned to work until April 2009. Dr. Rope provided an "Attending Physician Statement," dated August 29, 2009, in which he stated that Rodriguez could not work. Rodriguez's endocrinologist also provided an "Attending Physician Statement" to Countrywide, dated October 27, 2008, in which he stated that he was "unable to release this patient" from care. Rodriguez was finally released to return to work on a part-time basis in April 2009.

**II.     Standard of Review**

- 3 -

Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party's evidence is taken as true and all inferences from the evidence are drawn in favor of the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**III. Analysis**

The FMLA guarantees eligible employees twelve weeks of leave in a one-year period following certain events: a disabling health problem, a family member's serious illness, or the arrival of a new child. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002) (citing 29 U.S.C. § 2612(a)(1)). Leave must be granted when medically necessary on an intermittent or part-time basis. *Id.* (citing § 2612(b)(1)). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. *Id.* (citing § 2614(a)(1)).

To prevail under the FMLA, an employee must prove, as a threshold matter, that the employer interfered with, restrained, or denied "the [employee's] exercise of (or attempts to

exercise) any rights provided by the Act." 29 C.F.R. § 825.220(a)(1); *see also Ragsdale*, 535 U.S. at 89. Even then, the FMLA provides no relief unless the employee has been prejudiced by the violation: the employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). *Ragsdale*, 535 U.S. at 89.

The gist of Rodriguez's claim is that Countrywide failed to give her proper notice of her FMLA rights as required by 29 C.F.R § 825.300(c) because Countrywide's July 30, 2009 letter, informing her that without additional documentation from her doctor supporting her leave of absence by August 4, 2008, her failure to return to work would be considered job abandonment, was sent to the wrong address and was not received until some unknown date in the future. Rodriguez claims that the letter was sent to her previous address even though she contacted Countrywide on numerous occasions before July 30, 2009, to correct her address of record.

The regulation cited by Rodriguez, 29 C.F.R. § 825.300(c), requires employers to send to an employee's address of record written notice detailing the specific expectations and obligations of the employee and explaining the consequences of failing to meet those obligations. The notice must be provided at the time eligibility notice is provided under 29 C.F.R. § 825.300(b). Under 29 C.F.R. § 825.300(b), when an employee requests FMLA leave or when an employer acquires knowledge that the employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days (absent extenuating circumstances). "Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period." *Id.*

These regulations were revised on November 17, 2008, with an effective date of January 16, 2009. The version of the regulations in effect in 2008, when the events in question occurred, codified the directed notice requirement in 29 C.F.R § 825.301 (2008).

- 5 -

Under 29 C.F.R. § 825.301(b)(1) and (c) (2008), the employer had to give the employee written notice detailing the specific expectations and obligations of the employee and explaining the consequences of a failure to meet those obligations "no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave" within "a reasonable time after notice of the need for leave is given by the employee–within one or two business days if feasible." If leave had already begun, the regulations required the employer to mail the notice to the employee's address of record. 29 C.F.R. § 825.301(c) (2008).

Under either version of the regulations, Countrywide complied with its obligation to give Rodriguez notice. The regulations only require the employer to give written notice to the employee detailing the specific expectations and obligations of the employee *after the employee initially requests leave* (or, under the new regulations, once the employer reasonably learns that the employee's leave may be for a qualifying reason). Rodriguez does not dispute that Countrywide sent to her address of record and that she received an FMLA Designation Letter, Leave of Absence Request Form, Health Care Provider Certification Form, and copies of Countrywide's Leave of Absence Overview, FMLA Policy, and FMLA Fact Sheet. Rodriguez acknowledges that she received those documents the day after her doctor faxed a note to Countrywide releasing Plaintiff from work due to stress. It is undisputed that those documents advised Rodriguez of her obligations and of the consequences of her failure to meet those obligations. Rodriguez does not cite any authority for the proposition that Countrywide had an obligation to furnish additional notice. Countrywide's failure to send the July 30, 2008 letter to Rodriguez's address of record is therefore not actionable under the regulations cited by Rodriguez.

Even if Countrywide's purported failure to send the July 30, 2008 letter to the correct address is actionable, Rodriguez has not asserted that any of her rights under the FMLA were impaired as a result. The failure to notify an employee of the employee's rights under the FMLA can constitute interference if it affects the employee's rights *under the FMLA*. *Xin Liu v. Amway*, 347 F.3d 1125, 1134-35 (9th Cir. 2003). Rodriguez, however, has not claimed

that her FMLA rights were affected by Countrywide's failure to send the July 30, 2008 letter to the correct address. Rodriguez admits that she was given twelve weeks of leave as required by the FMLA. Rodriguez does not claim that Countrywide denied her the right to use her FMLA leave, discouraged her from using that leave, or miscategorized her leave. *Cf. Xin Liu*, 347 F.3d at 1135 ("A violation of the FMLA simply requires that the employer deny the employee's entitlement to FMLA leave."). Instead, Rodriguez's contention is that Countrywide's Employee Handbook provided that employees who exceeded the twelve weeks of FMLA leave and still needed to be absent would be placed on Non-FMLA Leave for up to one additional month. Rodriguez claims that, "Countrywide did not provide Plaintiff with the Non-FMLA Medical Leave at the conclusion of her FMLA Leave, but terminated Plaintiff on August 13, 2008, two days after her FMLA Leave time expired." Had Countrywide sent the July 30, 2008 letter to the correct address, Rodriguez claims she would have pursued other rights available under Countrywide's FMLA policy or pursued an application for short-term disability.

So stated, Rodriguez cannot pursue a claim under the FMLA. "An employer complies with the FMLA so long as it meets or exceeds the statute's minimum requirements." *Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1140 (9th Cir. 2002) (holding that employees did not state a claim under the FMLA when employer switched to a less favorable benefits package because, under the FMLA, an employer is allowed to change its own programs as long as the employer meets or exceeds the FMLA's minimum requirements); *see also Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008) ("To prevail on an FMLA interference claim, an employee must show that her employer deprived her of an FMLA entitlement."). Even if Countrywide violated its own leave policy, Rodriguez cannot state a claim under the FMLA because she has not asserted that Countrywide's conduct interfered with the rights guaranteed to her by the FMLA. *See Dolese v. Office Depot. Inc.*, 231 F.3d 202, 203 (5th Cir. 2000) (holding that employer's contractual agreement to provide employees with more generous family and medical leave than mandated by the FMLA did not create a cause of action cognizable under the FMLA); *Weidner v. Unity Health Plan Ins.*

*Corp.*, 606 F. Supp. 2d 949, 956 (W.D. Wis. 2009) (finding that an employee could not maintain a cause of action under the FMLA for an employer's violation of its more generous leave policy and citing other cases in support).

Finally, Rodriguez cannot show that she was prejudiced by Countrywide's purported failure to send the July 30, 2008 letter to the correct address because it is undisputed that Rodriguez would not have been able to return to work until April 2009, eight months after her twelve weeks of FMLA leave expired. *See Ragsdale,* 535 U.S. at 90 (finding no prejudice from the failure to give notice because the employee "ha[d] not shown that she would have taken less leave or intermittent leave if she had received the required notice"); *Edgar v. JAC Prods.*, 433 F.3d 501, 506 (6th Cir. 2006) ("An employer does not violate the Family and Medical Leave Act when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave."); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999) ("The fact that [Plaintiff] was not restored to his position at the end of that 12-week period did not infringe his FMLA rights because it is also undisputed that at the end of that period he remained unable to perform the essential functions of his . . . position."); *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1057 (D. Ariz. 2003) ("Because Plaintiff did not return to work [at the conclusion of her twelve-week protected leave], or provide evidence that she would have returned on that date absent Defendant's actions, there are no genuine issues of material fact regarding whether Plaintiff's rights under the FMLA were prejudiced by Defendant's actions."); *see also Frazen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) (holding that as a matter of law plaintiff was not entitled to damages because he was unable to return to work at the end of his twelve-week FMLA leave).

IT IS THEREFORE ORDERED that Countrywide's Motion for Summary Judgment (Doc. 37) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and that Plaintiff take nothing. The Clerk shall terminate this case.

DATED this 20th day of July, 2010.

/s/ Neil V. Wake
Neil V. Wake
United States District Judge